Okay, we'll call case number 21-4129, P. v. United Healthcare Insurance. Good morning, Your Honors. Amanda Berman for Appellants United Behavioral Health and the Morgan Stanley Medical Plan. With me at council table this morning is my colleague Amy Pauley. We ask this court to overturn the decision below and affirm UBH's denial of benefits, which covered approximately 11 months of round-the-clock residential treatment at two different facilities for two key reasons. First, because the district court improperly substituted its judgment for the seven physician reviewers who unanimously and reasonably concluded that LP's medical record did not show either a need for intensive residential treatment or that she was receiving care meeting the medical necessity criteria for residential treatment. And second, because the district court imposed requirements on the plan that go beyond those set forth in ERISA's implementing regulations. Now, before I address those two points, I'd like to talk briefly about the standard of review here. Although the district court suggested that the decision should be subject to de novo review, it did not so find. It instead applied the arbitrary and capricious standard. And that is the proper standard here, Your Honors, because the plan- Arbitrary and capricious for factual findings. Deference to the plan's decision, Your Honor. Okay. Yeah, that's a little different maybe, but okay. Substantial evidence, Your Honor. As this court has defined it, the arbitrary and capricious standard in this setting asks whether there is substantial evidence to support the administrator's decision. That's the standard, yeah. Yes. And that is the appropriate standard here because the plan gives the administrator deference and the administrator complied with ERISA's core procedural requirements here. The claimant's key argument that that's not the case is that the plan did not sufficiently address LP's substance use. But that, Your Honors, we think raises a substantive issue, not a procedural issue. So even if it were true, and I'm going to explain why it's not true, it's not a reason to dispense with deferential review. The court shouldn't conflate the substance of the decision and whether the decision was sufficiently explained in the letters with the process that led to it. Now, turning to the substance of the decision- Well, if the court really didn't address it, why isn't that procedural? If substance, when the court did address something, or said, I don't need to address it, I mean, that would address me addressing it, ruling is irrelevant. But if the court just simply ignored it, why wouldn't that be a procedural problem? So the plan did not ignore it, in fact. Several of the reviewers- Well, then we go to a factual application rather than a legal definition. Exactly, Your Honor, and that's why we think it's a substantive issue because it requires the court to look at the decision letters and say, was that issue sufficiently addressed? And I'd like to make a couple of points on that, Your Honor. First of all, several of the decision letters address it head-on. It's best addressed in the external reviewer's letters. And, Your Honor, there's no reason to distinguish between the external reviews and the internal. The external are called for in the plan, they're binding on the administrator, so they're as much a part as UBH's decision. We've always said that you hold the arbitrator to the statements that were made to justify the ruling. And that is public statements, or not public, but statements made to the claimant. And I don't know that we hold anybody to their subjective or privately expressed views that weren't given to the claimant. Your Honor, so the statements I'm talking about in the external reviewer's decisions were in the letters to the claimant, to LP's parents. As justification for the ruling? Yes, Your Honor, and I'll point you to one. For example, the external reviewer for UNTA stated, the patient was not reported to have had any significant substance use over the past several months, and there were no reports of significant urges to engage in SANE. Were those given at the time of the denial of benefits? Yes, Your Honor, that's in the letter that went to LP's parents, and you can see that at Appendix Volume 1, page 197. Just so we're clear, these letters you're talking about, were the various letters that accompanied denials and appeal decisions and things like that? Yes, Your Honor, so we have a total of seven letters here. This issue, substance use, wasn't even raised until after the first appeal decision by Dr. Iqbal. We then see the issue addressed more in Dr. Colopy, the next reviewer's notes, than in the letter. But Dr. Colopy's explanation as to why care was not medically necessary focused on reasons that applied to all of LP's admission reasons, substance use and mental health benefits. And included, for example, Dr. Colopy noted that no clinical information was provided to support the medical necessity for treatment in a psychiatric residential setting or to document the daily provision of residential treatment services. And then, as I mentioned, we had the external reviewers who addressed substance use head-on. We have another of the UBH reviewers that also mentioned it in the letter that went to LP's parents. So we do think this was addressed. Now, am I right that one of the issues floating around in this case is the idea that your physicians did not sufficiently grapple with the treating physician's opinions and recommendations and that type of thing? Yes, Your Honor. So how does that play out? Because I believe your opposing counsel's opinion is if you don't do that, you lose. Your Honor, that's just not right under this court's precedent. And this court has addressed this issue at least three times. In the Mary D. decision, which claimants argue the court should just disregard because it's unreported. But that's not the only place it addressed it in the Tracy O. decision and in the Eugene S. decision, which was a reported decision. And in those cases, this court observed that if you look back at the regulatory text here, the health benefit regulation says that if your denial is based on medical necessity, you've got to explain why care was not medically necessary. But then the disability regulation, which is at subsection 7 of 29 CFR 2560-503-1G1, and then subsection 7 says in the case of an adverse determination with respect to disability benefits and only disability benefits, you've got to provide an explanation of the basis for disagreeing with the views of the claimant's providers. So that is a regulatory requirement that applies only to disability benefits claims. And that's why this court has consistently said that it's not something that has to be discussed in the decision letters for health benefits claims. So are you aware of any circuit court opinions from outside this circuit that grapple with this issue? You know, Your Honor, I would point the court instead to the Supreme Court's decision in Black and Decker. And there, you know, the court articulated that there is no heightened burden of explanation when the plan declines to adopt the view of the member's providers. And that was a decision that predated the change in the regulations to add this requirement for disability benefits. And so at the time, the Supreme Court was addressing both health benefits and disability benefits, and the regulatory language did not have this added requirement for disability benefits. Okay, so the Black and Decker case, if I go pull it up, is going to address both disability and health benefits. Your Honor, let me clarify this. So Black and Decker specifically addressed disability benefits when the language was the same as the health benefits regulatory language. Before in 2016, the Department of Labor added this additional requirement of discussing provider opinions for disability rate benefits decisions but not for health benefit decisions. So has there been any circuit court, or I'll even give you a district court other than Utah, that has addressed this difference in the regulations where one of them says specifically that you have to grapple with the treating physician's opinions and one of them doesn't? Anyone but the District of Utah in our cases? Your Honor, I am not aware of any right now. I apologize. I'm not aware of any either. That's why I was asking you. I'm going to give Mr. King a chance to weigh in on that one also. Okay. So, Your Honor, there we just think the regulatory text controls that issue, and so the criticism that the district court made that you should have discussed the contrary provider opinions was wrong. But I also want to note, Your Honor, that, for example, Dr. Gallegos in her decision letter for UINTA did discuss the provider opinion. She noted, and you can see that at this at Volume 11, pages 176 to 177, she explained that she had had a call with the UINTA facility's designee, meaning she talked to the provider, and based on that call, she found that LP had made progress, her mood was more stable, she was participating in her treatment, she was not having any serious mental health issues and could have been treated in a partial hospitalization setting, instead of in the very intensive, 24-7, away-from-home residential treatment setting. So we do actually have in the decision letters a discussion of the provider's own opinion. Can we, so on this issue, can we consider your doctor notes that weren't communicated to the patient? Yes, Your Honor, we believe that is appropriate, and that is because the notes are part of the administrative record, and the substantial evidence standard asks whether there is sufficient record evidence to support the plan's decision, and the record includes the notes. Now, it is a separate question as to whether the decision letter comports with the minimum requirements set forth in the implementing regulations that I was just discussing, but when assessing whether that decision, as communicated, was supported by the record evidence, this court can look to the notes, and the courts regularly do. For example, in the Tracey O case, where this court affirmed on appeal, the district court based its decision both on the decision letters and on internal notes, which it looked to, to rebut very similar assertions that the plan hadn't addressed provider opinions and certain issues in the medical record. So we think that's appropriate. Do you know, are there any published opinions that talk about referring to the doctor, to the provider notes, or the reviewer notes? Let's see, Your Honor. So Tracey O is unpublished. Well, Your Honor, I would point the court back to what it said in Adamson v. Unum Life Insurance, back in 2006, when this court said the court should consider the administrative record as a whole. And similarly, in Kimber v. Theoko Corporation in 1999, this court discussed what the arbitrary and capricious review standard means in this context, explaining that it asked whether the decision is sufficiently supported by facts within the plan's knowledge. And the internal notes are facts within the plan's knowledge. Now, we agree that it would be improper for the plan to articulate one reason for denying coverage, like medical necessity in the letters, and then say something entirely different in the notes, and then try to point to that. What if your doctors have different opinions on the reason for their denials? Sorry, Your Honor. What if your doctors have different reasons for denying? Your Honor, that's not the case here, because the reason for everybody was medical necessity. Well, understood. Let's nuance that a little bit. Everybody said it wasn't medically necessary, but there was disagreement on why. Sure, Your Honor. I don't think that's a problem, because the entire point of this appeals process is that every level is supposed to be an independent, unbiased review of the record. So, of course, the decisions are not going to be exactly the same. And again, we go back to the substantial evidence standard, where the court looks at the record as a whole and has to assess whether the plan's decision, which was ultimately that the residential treatment level of care was not medically necessary here. She didn't need care at that level, and she didn't appear to be receiving care that met the criteria for that level. Whether the plan has adequately articulated that, and whether the evidence in the record supports that. When you keep saying evidence in the record, are you defining record to be documents and testimony and statements that the claimant has access to, or are you considering in the record to be broader than that, and that is part of the insurance carrier's entire investigation, not all of which was revealed to the claimant? Your Honor, I don't think we have any problem here of some of the material not being provided. ERISA's implementing regulations say that the obligation is that the plan must provide all the material in which the decision is based if they are asked to. And there's no argument here by the claimants that that didn't happen. I don't think we have that distinction. But are you saying that there were things that weren't asked for, and therefore we didn't have a duty to produce it, and yet it is part of the record that we're now relying on to justify our position? Your Honor, I'm not aware of anything that was asked for and not produced. I don't think that's an issue in this case. How about not asked for and not produced? I mean, that makes me gracious because it's the way your lawyer-like answers that question. Well, Your Honor, I will admit, you know, because this issue hasn't been raised, I believe everything was provided to claimants, but I don't want to overstate, frankly. Well, I guess we'll hear from the appellee, but there's this other longstanding principle that you're held, the plan is held, rather, to the statements that the plan chooses to give for its justification. And so if you are trying to see either theories that weren't expressed to the claimant or evidence that supports the theory that might have been expressed, but the evidence was not given to the plaintiff, that might be a troublesome thing to even be considered. So it's important to me to judge things by what was given to the claimant. Your Honor, and we believe that the decision of the plan can be supported even if you look only at the decision letter sent to the claimant's parents. And my question was, did the claimant have more than the decision letter? I mean, did you say to the claimant, here's all the documentation for us, here's all the private doctor's rulings and things? Because unless things were given to the claimant, I think you're going to have a burden with me of what we can consider. To me, the test has always been what you articulated to the claimant, that was the bed you made, that's the bed you're going to sleep in. Just in fairness, I believe I drug you into this rabbit hole based on something that you weren't arguing. Is that correct? Your Honor, I don't think we have an issue here of things not being provided. I just don't want to overstate and promise that every note was provided when I can't say that with 100% certainty. But I would just point you back to the decision letters. Well, I'll get to the appellee. We'll give us their perspective. And maybe between yours and theirs, we can figure this all out. Yes, Your Honor. But if I can just point you to one example from the decision letters. For example, Dr. Colopy, he points to the guidelines. He provides a link where the claimants can access the guidelines on which the decision was based. And he says no clinical information was provided to support the medical necessity for treatment in a psychiatric residential setting or to document the daily provision of residential treatment services. So that is a sufficient basis to deny care as not medically necessary. And we see something like that in all of the decision letters. So I'm over time, Your Honors. And I just wanted to be clear. I think what's happened here is that I was asking you about extra things that were outside of your position on appeal. Is that when I was asking you about things not in the letter? I mean, is part of your argument that these things that weren't in your letter should be considered? Your Honor, we think it is appropriate to the extent the court has concerns about an issue like substance use not being discussed enough in some of the letters. We think you can look at the notes where, for example, Dr. Colopy goes into more of a discussion of that issue. We think that is appropriate because it's part of the administration. All right. I just wanted to make sure that I hadn't made something part of this case that wasn't, but it sounds like it was. So I appreciate it. You're out of time. Thank you, Your Honor. Mr. King, I'll try not to do that to you, too. And let's give Mr. King a couple of minutes, if we can. Thank you. May it please the Court, Brian King, for the plaintiffs in this case. Section 1133 of ERISA, 29 U.S.C. Section 1133, requires a full and fair review by ERISA fiduciaries of all denied claims. And for many years, this Court has ruled that ERISA's claim procedure regulations require a meaningful dialogue. That phrase shows up in Gilbertson and in the Gaither case and in a number of cases since then, as part of this mandatory pre-litigation appeal process. Because the pre-litigation appeal process is mandatory and because this Court generally, along with the district courts, are limited to the pre-litigation appeal record, the processes that are in place under ERISA that require and set up the method for providing a full and fair review are really critical. Sound processes that adhere to the claim procedure regulations increase the likelihood that claim decisions are correct or at least reasonable. So we have to look at those processes. They're very important. And that's what the district court did here, Your Honors. The lower court, the district court, took into account the information that was before it and made rulings as to both procedural and substantive irregularities and problems. The district court was very thorough in saying, we can analyze this under de novo standard of review, we can analyze this under an abuse of discretion standard of review, the outcome is the same regardless. And that's because the lower court found that United failed to consider this young woman's, seriously ill young woman's, substance use disorder and despite repeated requests by her father for information and an analysis as to how United came up with its decision, United failed to identify any specific references to information in the medical record that supported its conclusion. Doesn't that run headlong into what your opposing counsel was quoting, though, where they specifically took on the drug addiction issue and said there's no indication in the past several months that there's been a desire to use drugs and I don't remember the exact language. I mean, so how can we say they didn't grapple with that issue when they expressly did? I mean, what level of detail do they have to drill down to make that work? I think the critical component, Judge Carson, is to what extent are we talking about a dialogue between the parties that's meaningful? And what we had here is father asking over and over and over again in very long, detailed, substantive, informative appeal letters, how are you coming up with any analysis for this substance use? This is a young woman who's got serious substance abuse issues. She's been diagnosed as such. The individuals who are treating her in the programs are talking about the fact that she wants to continue to use drugs as soon as she leaves the program. That's a red flag. This is kind of morphing in my mind. I thought the question was that they didn't address the issue, but now you're saying, well, maybe they did, but their resolution of it was contrary to the record. Which are you arguing? Thank you, Judge Rebell. I appreciate that clarification because I want to make this clear. We agree entirely with the district court that there was simply no meaningful addressing of the issue in the communications that were provided to the family. See, that's a separate obligation. That is a communication requirement to try to find reconciliation between the parties without involving the court. Exactly. That's quite separate from the truth or the accuracy of the decision. And I thought it was the former argument that was the real issue here, but at least we're kind of getting morphed into whether, in fact, they considered. Well, we don't think that even when you take into account their notes, that they meaningfully did take it into consideration. What you're talking about when you focus. But that's quibbling about the medicine. That's saying, gosh, we disagree with their opinion. We don't think they gave X enough weight. And, I mean, aren't we expressly not supposed to get into that? Well, you can't in the sense that you're not clinicians. Neither am I. So that's why it's critically important to look at what was exchanged between the parties in this pre-litigation appeal process. What if in all of the letters and the denials they said, dear Mr. So-and-so, thanks for submitting your claim on behalf of your daughter. You provided us with Dr. Ebell's notes and recommendations and Dr. Carson's recommendations. And we've reviewed those, and we disagree with their recommendations and are of the opinion that outpatient care is sufficient. Is that satisfactory, or is that not meaningful enough? I think it depends on what information they're looking at in the medical records. And I think it also depends on what information is provided as part of the family's appeal. I can envision an appeal that's very bare bones, for example, that says in response to a denial that comes along and says, we've looked at the medical records, we've looked at our own reviewers, they're MDs, they're well-qualified, they've looked at this, and they think care could have been provided at a lower level. If you just have a family that says, please reconsider this, I disagree. Will you please look at the medical records again? I don't know that they need to do more than what you just said, Judge Carson. So it can vary on a case-by-case? This meaningful dialogue is going to vary on a case-by-case basis? Very much so. I think it's fact-sensitive. And I think that when you look at the record in this case, Your Honors, you're going to see appeal letters sent over and over and over again by this family that are detailed, that ask questions, that say, please provide us information about, did you take into account LP's substance use history? It was problematic. It involved multiple substances, marijuana, cocaine, alcohol. These internal communications between the insurer and the doctors? No, this is an appeal letter from the family, Your Honor. This is an appeal letter from dad, from father. And there are several of them in which he asks many questions and says, please communicate with me about why you're, are you really taking into account LP's substance use history? Because I don't see it in your last letter. And what comes back? Nothing that addresses the substance use disorder. And that's the problem that the district court has. So it's the lack of dialogue, responsiveness to the question about substance abuse. Correct, Your Honor. It goes to this phrase that the Tenth Circuit has relied on, in many cases, of meaningful dialogue. Is there a meaningful dialogue? If there's no meaningful dialogue. And that's quite apart from what the evidence in the record might show. Agreed. The record might support their decision, but there is a separate claim according to you, and I think it's probably correct, that you have to have a meaningful dialogue in addition to whether or not the record would support it. That's exactly right, Your Honor. And when you don't have a meaningful dialogue, this court has made clear, and this goes into another issue in the case, about whether remand or an order of benefits is appropriate. This court's made clear when there's not a meaningful dialogue and when the claim was wrongfully denied, then a remand is appropriate. But when the court finds, based on the information in the record, that it is clear and that there is no reasonable doubt about whether the claim should have been paid or not, that's when this court has made very clear, you order payment of benefits. And the reason for that is to do otherwise opens the door for abuse by insurers to get a second bite at the apple in a way that delays the process opens the door for abuse of the families in terms of over and over again, serial denials of the claim on serial remands. So that, again, is fact sensitive. Can you point us to a case where we have not remanded, where we just went ahead and ordered benefits, largely on the analysis you just provided? Oh, sure. I think that the Carlisle case may be the most recent. Did you say Carlisle? Carlisle, C-A-R-L-I-S-L-E. Carlisle, okay. What was the site of that one? I don't have the site of it, Your Honor, and I looked in my briefing and I didn't include it in my materials. I think Razanac is another one that we do cite. I believe Flinders is another one that we cite. There are several that we cite where the Tenth Circuit has ruled it's appropriate to order payment of benefits when the record is clear. Well, did they – it's one thing to say they ruled it would be appropriate. Did those cases all, in fact, just issue the award rather than remanding? I don't know whether, as in this case, Your Honor, they said the district court ordered payment of benefits and we're affirming or whether they remanded and instructed the district court to calculate the benefits. But what you've got in front of you, and it's part of a jurisdictional issue that we briefed a little bit, you've got supplemental orders from the district court identifying the specific amount at issue for the denied benefits, for the prejudgment interest, and for an award of attorney fees. So you've got a complete record ordering payment of benefits and you've got a basis for it from the district court here. Let me ask you. So I asked your opposing counsel and she was not aware of any, but this issue – maybe it's because you are on the forefront of this issue. I saw you and your opposing counsel out in the audience today and I was like, man, I recognize them. It's because I saw you a few weeks ago. Yes. But is this happening elsewhere? What other district courts and circuits are dealing with this issue? I can tell you, Your Honor, that my law office does a lot of this kind of work there. A lot of these cases in Utah, many of them involve the Mental Health Parity Act, which is not an issue in this case, but there are other appeals that you have that before you, you'll hear that. But we don't know of any – I don't know of any published appellate decisions that say that the plan, for example, can rely on undisclosed notes. Undisclosed or undisclosed? Undisclosed. We are not aware of any appellate decisions that say that the plan can rely on undisclosed notes or information. That is, they can rely on only things that they convey to the claimant because otherwise the claimant would be operating under an incomplete understanding for its purposes of a meaningful dialogue. Exactly, Your Honor. So you said of any reported decisions, do you know of unreported decisions that say that they can rely on those notes? I don't off the top of my head, Your Honor. I know that there are no – I'm not aware of any unreported Tenth Circuit decisions at all. But, again, to some degree this is a fact-sensitive issue. And one of the things that GLSTA, which we do rely on from the First Circuit, was dealing with is saying, I'm not going to allow you to raise a new basis for denial that is contained in your notes that wasn't discussed in the pre-litigation appeal process. Well, I'd be the first to acknowledge that what we're talking about here  So, again, we're – I mean, is that even an issue in this case, though? No. Okay. I mean, we don't have undisclosed basis for denial. What we have is undisclosed information about – that would be a direct response to questions that had been asked by the family in the appeal documents and would have allowed the family to be on a sounder footing, as you've indicated, Judge Abell, in terms of carrying out intelligently this pre-litigation appeal process that's so critically important. So the claim procedure regulations say, you have got to provide, upon request, an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances. We don't know if that application occurs without the information being disclosed to the family. You just threw in a phrase I'm curious about. You said, upon request. What if the claimant doesn't know the law or their rights enough to make a request and they simply say, we just don't understand. There's things that – disabilities that you haven't considered. But we're not asking you for more data. We're just saying we disagree with the conclusion. Would that be a request, and is a request necessary? Thank you for that clarification, Judge Abell. It's very important. Because you're referring to the claim procedure regulations at 29 CFR Section 2560.503-1, paren g, end of paren, paren 1, end of paren, paren v, little v, end of paren, paren a, I'm sorry, paren capital B, end of paren, which says – My wife and I talk about a little else around the coffee table other than that. We're pretty familiar. It's a mess. But the regulation makes the specific distinction you just made, Your Honor. It says that when an adverse benefit determination is based on medical necessity or experimental treatment or similar exclusion, then they must explain the scientific or clinical judgment for the determination applying the terms of the plan to the claimant's medical circumstances or a statement that such explanation will be provided free of charge upon request. So they do have to provide it regardless of whether it's asked for or not. But at the very least, they either have to provide it or they have to say, if you want it, we'll give it to you. So what if these letters said what they say, and at the end of them it says, if you want any more information, feel free to ask for it? I think that's an important – the claim procedure regulations allow for that. Would you disagree that that was adequate then if they gave you their response and said, hey, if you want more explanation, ask for it? An invitation – as long as that invitation is a genuine, authentic invitation to a meaningful dialogue, sure. But we never know. Well, what we want to know is – How do you define that, for heaven's sakes? Well, there are two levels of appeal. There may be at least – there may be no more than two levels of appeal in the claim procedure regs. So what Judge Carson says is you can have a plan denying a claim and saying, here's why, and then saying, if you disagree, you can appeal. And then when the appeal comes in, you can have the plan say, okay, we're going to give you a second level appeal. If we disagree, we're going to maintain our denial. If you continue to disagree, you have a final second level appeal and you can provide information. Now, part of the meaningful dialogue, of course, means that there has to be response that's meaningful and fair and truthful and authentic to legitimate requests for information in the appeals. And that's what we don't have here. We don't have a good response to our appeal letters. Yeah, and so one of the difficult things with this is – and I think this is how – this is your position – is that in some cases a meaningful dialogue might be, thanks for your appeal. We've reviewed your records again, and we continue to believe X, so we're denying it. But in another situation, the request for an appeal or whatever might be so detailed and specific that it requires a heightened response. But the response can differ depending on what the appeal says. That's right, Your Honor. That's absolutely right. So I have in mind what your responses were. The denial benefits your various letters. But I don't have clearly in mind – I'm just now recalling the complaints, the requests for data. So I'm sure it's in there. I'm sure I read it, but I just don't have that. Yeah. Did the claimant, did David P. say, she has got substance abuse and urging for future substance abuse, and I don't believe you have addressed whether that problem can be treated adequately except in a residential program. More than once he said exactly – he said pretty much that. And that's in the record. I mean, I'm sure I looked at it, but what I'm remembering is your responses rather than the request. Right. That is in there. That's in there, Your Honor. I think you're going to be struck. When you review the disparity between the information in the appeal letters and the questions that are asked and the responses from United, it's striking. And that's why we say so strongly and we feel so strongly. Because when I looked at the responses and they said, you won't benefit from further in-resident treatment, I say to myself, what more could they say? I mean, that is a fair response unless the request was for something more specific. Exactly. And it might have been a fair, as Judge Carson is saying, it might be a fair response depending on what the appeal letter is. But when you look at these appeal letters, you'll see much, much more was required of United. That's all I need to know for now. Thanks. Thank you, Counsel. Thank you. We went over here, so how about you want a minute? You got it. Nobody ever turns down their minute. Thank you, Your Honor. Three brief points, if I can get through them. First, there was a meaningful dialogue here, even if we just look at the decision letters. All of the letters said her symptoms don't rise to the level of needing residential treatment, 24-hour care. And all of the letters also noted that the clinical information did not show she was receiving that level of care, that she was getting that treatment by a psychiatrist weekly. That level of care simply wasn't being provided. And the letters pointed that out. Now, in regard to substance use specifically, which was the focus of the appeals, in addition to the language I quoted, which discussed that very explicitly, I think it's also important to remember that she was not being treated for it at either of these facilities. She was not being treated for substance abuse? Yes, Your Honor. Summit's own discharge summary said that issue was minimally addressed because it was secondary to the primary issue of managing her emotions. So she was being treated. Oh, secondary. That's not supportive of your statement, she wasn't being treated for it. It simply was she might have been being treated for it. It simply wasn't. There was something else that was more urgent. It was being minimally addressed. So they did not. And then at UINTIS, she didn't even. Well, last year you started it by saying she wasn't being treated for it. Now you're saying, oh, no, she really was, but it was just minimally treated. Minimally. So let me correct that. Minimally treated for it. And then at UINTIS, she doesn't even join a group to discuss substance abuse until five months into her stay. So you have to consider what the reviewers are seeing in the record when they're figuring out what to say in their decision letters. And this just wasn't a focus of her treatment. So that's why we have lesser discussion of it in the decision letters. And finally, Your Honor, I just want to note that it is very rare for there to be an award of benefits outright at the district court level. And this court's precedent says that's only appropriate where it is clear from the record that benefits are due. But you're telling us what these other cases you reference is not unprecedented. It's not unprecedented. But even the best cases that the district court cited, that claimant cite Mark M., Raymond M., the best cases for them on the facts, those cases remanded for the plan to reconsider. It is very rare for there to be an award of benefits. And where the error, you've got to look at the nature of the error. If the error is that the decision letters didn't discuss something sufficiently, like some substance abuse, that is a classic reason why you would remand so that there can be more consideration and discussion of that issue. Okay, thank you. Thank you, Your Honor. Okay, the case will be submitted and counsel are excused.